### STATE of Maine

### v.

### Peter D. PETERSEN.

Supreme Judicial Court of Maine.

Aug. 6, 1970.

Alexander A. MacNichol, Torrey A. Sylvester (Law Student), Portland, for plaintiff.

Grover G. Alexander, Gray, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

WEBBER, Justice.

Defendant appeals from conviction of a violation of 29 M.R.S.A., Sec. 2184, which provides:

"Any person who drives a motor vehicle on any public highway of this State at a time when his privilege to do so is suspended or revoked shall be guilty of a misdemeanor * * *."

It was stipulated at trial that defendant's license to operate a motor vehicle on the date of the alleged offense had been suspended. The State undertook to prove operation by defendant on a public highway

on the date alleged. There was ample evidence to support a jury finding that on that day defendant drove his automobile on "Route #35 in Naples." No direct evidence was offered that "Route #35" was then a public highway. Defendant now asserts that this lack of proof was fatal to the State's case.

23 M.R.S.A., Sec. 1351, dealing with the "installation of signals, devices and signs" by the State Highway Commission provides in part:

> "The commission is authorized and directed to establish a system of numbering all classes of highways which, in its opinion, is necessary for public convenience, and to publish maps from time to time showing the highways so numbered."

It is a matter of common knowledge that the highway system in Maine has been so numbered and signed and that the "Routes" so numbered are public highways. Every automobile traveler today makes common and effective use of road maps which employ and depend upon the designation of "Routes" by number, all such "Routes" being public highways. That "Route #35 in Naples" is a public highway running from Bethel to Kennebunkport and passing through Naples is a fact which we judicially notice and which required no proof in the trial below. The text of 29 Am.Jur.2d 53, Judicial Notice, Sec. 14 accurately states the guiding principle in these terms, "There are, however, many facts which need not be proved, since they are matters of common knowledge to all intelligent men, and will be judicially noticed by the court or jury. Judicial notice of such facts takes the place of proof and is of equal force; it replaces evidence, since it stands for the same thing. The doctrine of judicial notice is based upon obvious reasons of convenience and expediency, and operates to save trouble, expense, and time which would be lost in establishing in the ordinary way facts which do not admit of contradiction."

We have found no better expression of the applicability of the principle at appellate review level than is contained in Varcoe v. Lee (1919) 180 Cal. 338, 181 P. 223, 225. In that case the issue was whether or not a certain section of the City of San Francisco was a "business district." The Court said:

> "The actual fact of the matter is, however, that Mission street, between Twentieth and Twenty-Second streets, is a business district * * * beyond any possibility of question. It has been such for years. Not only this, but its character is known as a matter of common knowledge by any one at all familiar with San Francisco. * * * The probabilities are that every person in the courtroom at the trial, including judge, jury, counsel, witnesses, parties, and officers of the court, knew perfectly well what the character of the location was. It was not a matter about which there could be any dispute or question. * * *
>
> An appellate court can properly take judicial notice of any matter of which the court of original jurisdiction may properly take notice. * * *
>
> In fact, a particularly salutary use of the principle of judicial notice is to sustain on appeal, a judgment clearly in favor of the right party, but as to which there is in the evidence an omission of some necessary fact which is yet indisputable and a matter of common knowledge, and was probably assumed without strict proof for that very reason."

The record in the instant case clearly discloses that all participants in, the trial assumed the obvious fact that "Route #35 in Naples" is a public highway. The first witness for the State gave it as his place of residence. It was variously referred to by witnesses as a "road" which had "shoulders" wide enough for "half the width of the car," a "white center line" on a "curve" which was "solid" to indicate that "you can't pass," a "pavement" which was "dry," a "speed limit" of "50" miles per hour and was "the standard width of a state aid road." The questions of counsel, the an-

swers of witnesses and the instructions to the jury, unobjected to, make it apparent that all assumed the fact in issue. The question was first raised on motions addressed to the presiding Justice after the jury had retired to consider the verdict.

Appellant relies upon State v. Peterson (1939) 136 Me. 165, 4 A.2d 835. In that case a complaint charging operation while under the influence of intoxicating liquor alleged that the offense occurred on "Route 3 in Gray," without the additional allegation that this was a public way. The complaint was held bad. The Peterson opinion was written at a time when the strict technical requirements of common law pleading were observed in this State. Whether Peterson would now be followed in the light of M.R. Crim.P., Rules 2 and 3 need not be determined here. We note that Form 1 of the Appendix of Forms attached to the District Court Criminal Rules indicates approval of a form which would not meet the Peterson standard. Moreover, Peterson in 1939 antedated the full development of the numerical highway system as we now know it. 23 M.R.S.A., Sec. 1351, quoted above, was first enacted in 1945 (P.L.1945, Ch. 196). Common sense dictates that judges and juries need not be ignorant of what everyone else knows. We decline to apply the Peterson pleading standard to the proof requirement in the instant case.

■ While driving his automobile at the time and place alleged, defendant was involved in an accident. His resulting injuries necessitated his being driven to a hospital, which service was performed by a police officer. On the way to the hospital, the defendant in response to the officer's inquiry stated that he was the driver of the car. Defendant asserts that this admission was obtained and admitted in evidence in violation of the constitutional requirements imposed by Miranda v. Arizona (1965) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694. Miranda has no application. Defendant was not in custody or under arrest. The officer had no knowledge that any offense had been committed. There

was no focus of suspicion upon defendant. The officer was at most making a routine investigation of an automobile accident. There was no occasion for Miranda warnings.

■ The theory of the defense was that the defendant was not driving his car at the time and place of the offense, the actual operator having been a third party not available as a witness. Another passenger, witness for the defendant, was permitted over objection to testify on cross-examination that the defendant had earlier been driving his car on "Route #302," but at a point about two miles from the scene of the accident had exchanged places with the third party. Defendant asserts that what occurred two miles away was too remote and should have been excluded. The ruling was clearly within the discretion of the presiding Justice. In exercising that discretion, he could properly take into account that this was cross-examination and the credibility of the witness on the issue of defendant's operation of the vehicle was a matter for careful and painstaking testing. No error is shown.

Appeal denied.